## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,               )
                                        )
                           Plaintiff,   )          CRIMINAL ACTION
v.                                      )          No. 12-20093-01-KHV
                                        )
BRETT W. ELLIS,                         )          CIVIL ACTION
                                        )          No. 14-2578-KHV
                           Defendant.   )
_____ )

### MEMORANDUM AND ORDER

On November 19, 2013, the Court sentenced defendant to 72 months in prison.  This matter is before the Court on defendant's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Doc. #76) filed November 10, 2014.  For reasons stated below, the Court overrules defendant's motion and denies a certificate of appealability.[1]

### Factual Background

On July 12, 2012, a grand jury charged Brett Ellis with two counts of receiving and distributing child pornography and one count of possessing child pornography.  See Indictment (Doc. #1).  Defendant filed a motion to suppress.  Based on proffers from counsel and testimony at the hearing on defendant's motion to suppress, the Court found the following facts:

---

[1]     Defendant seeks leave to expand the record with new evidence.  See Motion For Leave To Expand The Record Of [Defendant's] 28 U.S.C. § 2255 [Motion] With New Evidence (Doc. #106) filed October 7, 2016.  The government has not opposed defendant's motion.  Because the new "evidence" is limited primarily to a civil rights case which defense counsel filed on behalf of a suspect regarding what defendant contends was a related search, the Court sustains defendant's request to include the evidence as part of the record.

Defendant also asks that his prior counsel, Melanie S. Morgan, recuse from further representation.  Motion To Recuse Attorney Of Record (Doc. #107) filed October 7, 2016.  Defendant is proceeding pro se in this matter.  Because Morgan has not entered an appearance in this post-conviction proceeding, the Court overrules defendant's motion to recuse as moot.

The Green Circle in Kansas City, Missouri is a store which sells hydroponic grow equipment that individuals sometimes use to grow marijuana.  On March 16, 2011 at 1:07 p.m., Missouri Highway Patrol Trooper [Sergeant Jim] Wingo saw a white male individual make a purchase at the store, exit the store and get into a Ford sedan.  Trooper Wingo gave the vehicle information to law enforcement officers who determined that the car was registered to Brett Ellis at 134 North Center, Apartment D in Gardner, Kansas.

On April 15, 2011, Sergeant [Thomas] Reddin of the Sheriff's Office in Johnson County, Kansas found a single trash bag in the community dumpster located behind defendant's residence.  Officers searched the trash bag and verified that it belonged to defendant.  Within the bag, officers found an unopened letter from Farmer's Insurance Group addressed to defendant, printed e-mail correspondence of defendant, and several green leaves including three small whole leaves which Sergeant Reddin recognized as marijuana leaves. [Footnote in original: The printed email correspondence related to the purchase and shipment of a carbon dioxide (CO2) regulator valve.  Defendant had inquired whether a certain valve would fit a certain size CO2 tank.  A CO2 regulator valve is part of the equipment which individuals use to cultivate marijuana.]  In addition, officers found a zip lock baggie with a piece of paper with the notation "White Widow (H)" written on it.  Based on a Google search, officers learned that the phrase "White Widow" relates to the White Widow marijuana strain.  Officers found links to web sites where seeds of that particular strain could be purchased.  Officers conducted a field test of the vegetation seized from the trash bag.  The test resulted in a positive indication for the presence of THC, the active ingredient in marijuana.  As with any field test, the test was presumptive, but not conclusive, for the presence of the substance.

Sergeant Reddin is an experienced law enforcement officer who has been involved in at least ten investigations of indoor marijuana grow operations.  Through his training and experience, he has come to recognize that the presence of marijuana leaves is often indicative of the presence of live marijuana plants.  Based on the above information, Mark Burns, a Deputy Sheriff with the Johnson County Sheriff's Department, prepared an affidavit for search warrant and presented it to Judge Kevin Moriarty of the District Court of Johnson County, Kansas.  Judge Moriarty found probable cause to search defendant's apartment and issued a warrant.  The warrant authorized the search and seizure of "all computers, computer software, computer systems, computer networks and supporting documentation, as defined in K.S.A. 21-3755(a)(2),(3),(5),(6), and (10), and all electronic and magnetic media stored therein, together with all storage devices, internal and external to the computer or computer system, including but not limited to: floppy disks, diskettes, hard disks, CD Roms, DVD ROMs, magnetic tapes, removable media drives, optical media, printers, modems, fax machines, digital scanners, digital cameras, system servers, video displays, and any other electronic or magnetic devises used as peripheral to the computer, or computer systems, for violations of K.S.A. 21-36a05, indicia of

-2-

ownership, user information, identifying or purporting to identify a user, installer, or licensee of operating system software or application software or data affiliation, of the above described items and documents, images, or correspondence." Search Warrant at 1, attached as Exhibit B to Defendant's Motion To Suppress Evidence (Doc. #24).

Memorandum And Order (Doc. #33) filed December 10, 2012 at 1-3.

During the search of defendant's computer for evidence of marijuana cultivation and trafficking, officers found evidence related to defendant's receipt and possession of child pornography. Plea Agreement Pursuant To Fed. R. Crim. P. 11(c)(1)(C) (Doc. #63) ¶ 2. Officers applied for and received a search warrant for evidence related to child pornography. Id. During the search, agents found more than 100 videos and more than 10,000 images of child pornography. Id.

On December 10, 2012, the Court overruled defendant's motion to suppress. Memorandum And Order (Doc. #33). On June 17, 2013, pursuant to a plea agreement under Rule 11(c)(1)(C), Fed. R. Crim. P., defendant pled guilty to Count 3 which charged possession of child pornography. See Plea Agreement Pursuant To Fed. R. Crim. P. 11(c)(1)(C) (Doc. #63).[2] The agreement proposed a sentence of 72 months in prison. See id., ¶ 3. Defendant had a total offense level of 28 with a criminal history category II for a guideline range of 87 to 108 months. See Presentence Investigation Report (Doc. #65) filed September 4, 2013, ¶ 96. On November 19, 2013, the Court accepted the Rule 11(c)(1)(C) agreement and sentenced defendant to 72 months. Melanie S. Morgan represented defendant throughout the proceedings.

Defendant did not appeal. On November 10, 2014, defendant filed a motion to vacate his sentence under 28 U.S.C. § 2255. Liberally construed, defendant's motion alleges that Morgan

---

[2]     As part of the plea agreement, the government agreed not to file additional charges and to dismiss the two counts of receiving and distributing child pornography. See Plea Agreement Pursuant To Fed. R. Crim. P. 11(c)(1)(C) (Doc. #63) ¶ 5.

provided ineffective assistance because (1) she did not procure an expert to testify at the hearing on defendant's motion to suppress; (2) she did not obtain transcripts from state court which showed that defendant was not ever arrested or charged with being a drug dealer; (3) she did not explain or keep current on relevant case law regarding search and seizure and (4) she advised defendant to plead guilty without investigating, explaining or asserting additional grounds to suppress.  Motion Under 28 U.S.C. § 2255 (Doc. #76) at 4-8; Motion For Leave To Expand The Record Of [Defendant's] 28 U.S.C. § 2255 [Motion] With New Evidence (Doc. #106) filed October 7, 2016 at 1-2; Defendant's Reply To Government Response To Defendant's Motion Pursuant To 28 U.S.C. § 2255 (Doc. #108) filed October 7, 2016 at 1.

### Analysis

The standard of review of Section 2255 petitions is quite stringent.  The Court presumes that the proceedings which led to defendant's conviction were correct.  See Klein v. United States, 880 F.2d 250, 253 (10th Cir. 1989).  To establish ineffective assistance of counsel, defendant must show that (1) the performance of counsel was deficient and (2) a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.  Strickland v. Washington, 466 U.S. 668, 687, 694 (1984).  To meet the first element, i.e. counsel's deficient performance, defendant must establish that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id. at 687.  In other words, defendant must prove that counsel's performance was "below an objective standard of reasonableness."  United States v. Walling, 982 F.2d 447, 449 (10th Cir. 1992).  Strickland mandates that the Court be "highly deferential" in its review of counsel's performance and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional

-4-

assistance." 466 U.S. at 689. The Court must not second-guess counsel's assistance with the benefit of hindsight simply because defendant was convicted and sentenced to a lengthy prison term. See id.

To show prejudice in the guilty plea context, defendant must show a reasonable probability that but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. See Hill v. Lockhart, 474 U.S. 52, 59 (1985); United States v. Clingman, 288 F.3d 1183, 1186 (10th Cir. 2002); Miller v. Champion, 262 F.3d 1066, 1068-69 (10th Cir. 2001). As part of his proof, defendant must show that "a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010) (citing Roe v. Flores-Ortega, 528 U.S. 470, 480, 486 (2000)). Defendant's mere assertion that but for counsel's errors, he would have insisted on trial is necessary, but ultimately insufficient to entitle him to relief. Miller, 262 F.3d at 1072; United States v. Gordon, 4 F.3d 1567, 1571 (10th Cir. 1993). The Court evaluates the factual circumstances surrounding the plea to predict "whether the outcome of the district court proceedings would have been different if his counsel had not committed the alleged errors." Clingman, 288 F.3d at 1186; see Miller, 262 F.3d at 1072 (court examines factual circumstances surrounding plea to determine whether petitioner would have proceeded to trial). While defendant need not show that he would have prevailed at trial, his prospects of succeeding inform the Court's view whether he in fact would have gone to trial absent the alleged errors. United States v. Triplett, 263 F. App'x 688, 690 (10th Cir. 2008); see Clingman, 288 F.3d at 1186. The strength of the government's case is often the best evidence whether defendant in fact would have changed his plea and insisted on going to trial. See Hill, 474 U.S. at 59-60.

-5-

## I.      Waiver Of Collateral Attacks

In response to defendant's motion, the government seeks to enforce the waiver of collateral attacks in the plea agreement.  A knowing and voluntary waiver of the statutory right to appeal or to collaterally attack a sentence is generally enforceable.  United States v. Chavez-Salais, 337 F.3d 1170, 1172 (10th Cir. 2003); United States v. Cockerham, 237 F.3d 1179, 1181 (10th Cir. 2001); United States v. Hernandez, 134 F.3d 1435, 1437 (10th Cir. 1998).  The Court applies a three-pronged analysis to evaluate the enforceability of such a waiver: (1) whether the disputed issue falls within the scope of the waiver; (2) whether defendant knowingly and voluntarily waived his rights; and (3) whether enforcing the waiver would result in a miscarriage of justice.  United States v. Hahn, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc).

To determine whether the disputed issue falls within the scope of the waiver, the Court begins with the plain language of the plea agreement.  United States v. Anderson, 374 F.3d 955, 957 (10th Cir. 2004); Hahn, 359 F.3d at 1328. The Court construes the plea agreement according to contract principles and based on what defendant reasonably understood when he entered the plea. United States v. Arevalo-Jimenez, 372 F.3d 1204, 1206 (10th Cir. 2004).  The Court strictly construes the waiver and resolves any ambiguities against the government and in favor of defendant. Hahn, 359 F.3d at 1343.

The plea agreement states in relevant part as follows:

**9.  Waiver of Appeal and Collateral Attack.**  If the Court agrees to the proposed plea agreement, the defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, the defendant's conviction, or the components of the sentence to be imposed herein (including the length and conditions of supervised release, as well as any sentence imposed upon a revocation of supervised release).  The defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the conviction and sentence imposed. By entering into this agreement, the defendant knowingly waives any right to appeal

a sentence imposed which is within the guideline range determined appropriate by the court.  The defendant also waives any right to challenge a sentence or otherwise attempt to modify or change his sentence or manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, U.S.C. § 2255 [except as limited by <u>United States v. Cockerham</u>, 237 F.3d 1179, 1187 (10th Cir. 2001)], a motion brought under Title 18, U.S.C. § 3582(c)(2), and a motion under Fed. Rule of Civ. Pro. 60(b).  In other words, the defendant waives the right to appeal the sentence imposed in this case except to the extent, if any, the court departs upwards from the applicable sentencing guideline range determined by the court. However, if the United States exercises its right to appeal the sentence imposed as authorized by Title 18, U.S.C. § 3742(b), the defendant is released from this waiver and may appeal the sentence as authorized by Title 18, U.S.C. § 3742(a). *Notwithstanding the forgoing waivers, the parties understand that the defendant in no way waives any subsequent claims with regards to ineffective assistance of counsel or prosecutorial misconduct.*

<u>Plea Agreement Pursuant To Fed. R. Crim. P. 11(c)(1)(C)</u> (Doc. #63) ¶ 9 (emphasis added).

The government asserts that the agreement waives ineffective assistance claims except as limited by <u>United States v. Cockerham</u>, 237 F.3d 1179, 1187 (10th Cir. 2001) or in other words, that only claims that counsel "was ineffective in negotiating the plea agreement" are preserved. <u>Government's Response To Defendant's Motion Pursuant To 28 U.S.C. § 2255</u> (Doc. #91) filed April 25, 2016 at 6.  The government ignores the final sentence of the waiver which states "[n]otwithstanding the forgoing waivers, the parties understand that the defendant in no way waives any subsequent claims with regards to ineffective assistance of counsel or prosecutorial misconduct."  <u>Plea Agreement Pursuant To Fed. R. Crim. P. 11(c)(1)(C)</u> (Doc. #63) ¶ 9.  Some seven years ago, the United States Attorney in the District of Kansas added this exception to the waiver in the standard plea agreement.  Because the exception for "any subsequent claims [of] ineffective assistance of counsel" is broader than the <u>Cockerham</u> exception, the <u>Cockerham</u> exception is surplusage as to ineffective assistance claims.  In other words, the plain language of the plea agreement permits all claims of ineffective assistance of counsel (not only those set forth in

Cockerham).[3]  Because defendant's claims relate to ineffective assistance of counsel, the Court

overrules the government's request to enforce the waiver of collateral attacks.  See United States v.

Chavez, No. 12-20039-01-KHV, 2016 WL 2989149, at *5 (D. Kan. May 24, 2016); United States

v. Smith, No. 12-20066-32-KHV, 2016 WL 2958454, at *2 (D. Kan. May 23, 2016); United States

v. Daniels, No. 12-20021-10, 2015 WL 4478390, at *2 (D. Kan. July 22, 2015); United States v.

Drayton, No. 12-2568-KHV, 2013 WL 789027, at *4 (D. Kan. Mar. 1, 2013); United States v. Clark,

No. 10-20076-12-KHV, Order (Doc. #567) filed February 7, 2013; United States v.

Cereceres-Morales, No. 09-20034-01-KHV, 2012 WL 4049801, at *1 n.2 (D. Kan. Sept. 13, 2012);

United States v. Perea, No. 08-20160-08-KHV, 2012 WL 851185, at *1 n.1 (D. Kan. Mar. 8, 2012);

United States v. Malone, No. 09-20159-01-KHV, 2012 WL 380239, at *2 (D. Kan. Feb. 6, 2012).

The government's continued assertion of the waiver of collateral attacks to bar claims of

ineffective assistance of counsel has led to a waste of judicial resources and confusion among pro

se defendants.  In at least nine cases before this judge since 2012, the government has asserted the

same frivolous argument.  Beyond the unnecessary use of judicial resources to address this claim,

the Court is concerned that the government assertion of the waiver sidetracks pro se defendants from

addressing the substantive merit of their claims.  In its response brief in this case, the government

presented four full pages of analysis; two of those four pages were directed at defendant's waiver

in the plea agreement.  To avoid this issue in the future, the Court directs the Assistant United States

Attorney assigned to this case to distribute this order to each Assistant United States Attorney in the

District of Kansas.  On or before February 7, 2017, government counsel shall file a notice in this

---

[3]       Even if the Court found some ambiguity in the waiver, the Court would resolve any
such ambiguity in favor of defendant.  See Hahn, 359 F.3d at 1343.

case that she has complied with this order.  For future cases before this judge, if the government intends to assert a plea waiver as a bar to any Section 2255 claims of ineffective assistance, counsel shall file a certificate attached to the motion which certifies that after review of the plea agreement as well as this <u>Memorandum and Order</u>, he or she has a good faith belief that defendant's claims are barred by the plea agreement.

## II.      Claim 1 - Failure To Present Expert Witness At Suppression Hearing

Defendant argues that Morgan provided ineffective assistance because she did not procure an expert to testify at the hearing on his motion to suppress.  <u>Motion Under 28 U.S.C. § 2255</u> (Doc. #76) at 4.  Defendant argues that an expert (1) could have examined his cell phone or GPS unit and shown his precise location on March 16, 2011 at 1:07 p.m. and (2) could have testified on the "innerworkings of email that were seized in his residence." <u>Id.</u> at 4; <u>Attachments To Habeas Petition</u> (Doc. #76-1) at 6-7.

Defendant has not alleged facts which suggest a reasonable probability that counsel's performance was deficient.  As to defendant's precise location at various times on March 16, 2011, defendant has not shown how such information would have changed the suppression ruling or his decision to plead guilty.  The Court's order on defendant's motion to suppress, and the factual basis of the plea agreement, noted that a "white male" left The Green Circle store on March 16, 2011. <u>Memorandum And Order</u> (Doc. #33) at 1, 4, 9; <u>Plea Agreement Pursuant To Fed. R. Crim. P. 11(c)(1)(C)</u> (Doc. #63) ¶ 2.  Neither the order on defendant's motion to suppress nor the factual basis of the plea relied on a finding that defendant was the individual whom Sergeant Wingo

observed.[4]  Accordingly, counsel's failure to hire an expert to testify on defendant's location on March 16, 2011 was not deficient.

Defendant claims that counsel should have employed an expert to show that the warrant was overbroad because law enforcement officers could have accessed and searched his e-mail account without searching his laptop.  See Attachments To Habeas Petition (Doc. #76-1) at 16 (computer expert could demonstrate that email can be read and updated from remote server anywhere in world); see also id. at 15 ("One does not need to own a cell phone or a computer to have an email address."); id. at 16 ("If the email was the excuse to search, it certainly serves as the limitation as to what it was to be searched.").  In the original motion to suppress, counsel argued that the warrant was overbroad and did not adequately connect the items to be seized with the computer and related devices.  Defendant's Motion To Suppress (Doc. #24) at 8.  The Court overruled this argument in part because "the description of the items to be seized was sufficient to provide a meaningful limitation on the search" of the apartment and computer.  Memorandum And Order (Doc. #33) at 7. Counsel's decision not to call an expert to testify that one could access email without searching a particular computer was within the wide range of reasonable professional assistance.  In particular, counsel could reasonably expect that the Court understood this fact and that her argument that the warrant was overbroad adequately raised this issue.  Counsel's failure to call an expert on the ability to remotely access email was not deficient.

Even if counsel's failure to call an expert was deficient, defendant has not alleged sufficient facts for the Court to find a reasonable probability that but for counsel's conduct, the results of the suppression or plea proceeding would have been different.  See United States v. Young, 206 F.

---

[4]     In any event, the location of defendant's cell phone and GPS unit would not have conclusively established his whereabouts at that time.

App'x 779, 785 (10th Cir. 2006). In particular, defendant has not shown that expert testimony would have changed the Court's decision to overrule his motion to suppress or that his chances of success on appeal of the suppression ruling would have changed, such that "a decision to reject the plea bargain would have been rational under the circumstances."[5] Padilla, 559 U.S. at 372. For these reasons, the Court overrules defendant's claim that Morgan provided ineffective assistance because she did not procure an expert to testify at the hearing on defendant's motion to suppress.

### III.    Claim 2 - Failure To Present State Court Transcripts At Suppression Hearing

Defendant argues that Morgan provided ineffective assistance because she did not obtain transcripts from state court which showed that defendant had never been arrested or charged with being a drug dealer. See Motion Under 28 U.S.C. § 2255 (Doc. #76) at 5; Attachments To Habeas Petition (Doc. #76-1) at 15. Defendant apparently claims that counsel should have used this information to show that if officers had performed a background check, they would have learned that he had no prior drug dealing history and that a warrant for evidence of sales on his computer would have been overbroad. Attachments To Habeas Petition (Doc. #76-1) at 17. Defendant notes that the officer who prepared the search warrant affidavit did not conduct a criminal background check. Id. at 13.

Counsel's failure to present evidence of defendant's lack of a criminal history was not deficient or prejudicial. Officers are not required to perform a criminal background check before seeking a search warrant of a residence, and the absence of criminal history does not negate a

---

[5]    As to the ruling on the motion to suppress, the Court also overruled defendant's motion under the good faith exception in United States v. Leon, 468 U.S. 897 (1984). Under Leon, the Court determined that even if the warrant lacked probable cause, the evidence obtained during the search was admissible because police officers acted in good faith and reasonably relied on the search warrant. United States v. Price, 265 F.3d 1097, 1102 (10th Cir. 2001); see Leon, 468 U.S. at 913.

finding of probable cause based on other circumstances.  See United States v. Jenkins, 901 F.2d 1075, 1079-80 (11th Cir. 1990) (various omissions including suspect's lack of criminal history did not preclude probable cause finding); Collins v. City of Sacramento, No. CIV-S-06-123RRBGGH, 2007 WL 2972908, at *5 (E.D. Cal. Oct. 10, 2007) (affidavit sufficient to support probable cause despite omission of suspect's lack of criminal history), aff'd, 328 F. App'x 361 (9th Cir. 2009).  The Court therefore overrules defendant's second claim for relief.

**IV.    Claim 3 - Failure To Explain Relevant Case Law On Search And Seizure**

Defendant argues that Morgan provided ineffective assistance because she did not explain or keep current on relevant case law regarding search and seizure.  Motion Under 28 U.S.C. § 2255 (Doc. #76) at 4.  In particular, defendant claims that Morgan did not understand that during a search of a computer for evidence of marijuana transactions, police officers could not seize images of child pornography.  Attachments To Habeas Petition (Doc. #76-1) at 23-25 (citing United States v. Carey, 172 F.3d 1268, 1271 (10th Cir. 1999)).  In Carey, the Tenth Circuit held that a police officer violated the Fourth Amendment when he seized multiple images of child pornography during a computer search for records pertaining to the distribution of illegal drugs.  See Carey, 172 F.3d at 1273-76.  When the officer in Carey inadvertently discovered a pornographic file, he began looking for similar files, thereby expanding the scope of the search without obtaining a second warrant.  See id.  Here, unlike Carey, after the officers discovered some evidence of child pornography, they obtained a second warrant which specifically authorized a search for such materials.  Presentence Investigation Report (Doc. #65) ¶¶ 28-19 (after forensic examiner of defendant's laptop found filenames in user's recent history stating it was child pornography, he stopped examining laptop until subsequent warrant allowed search for evidence of child pornography); Defendant's Motion To Suppress (Doc. #24) at 2 (officers obtained second warrant which permitted search of computers and related

devices for child pornography).  Defendant has not shown that counsel had a reasonable basis to challenge the subsequent warrant.  See United States v. Burgess, 576 F.3d 1078, 1095 (10th Cir. 2009) (no Fourth Amendment violation where agent immediately closed gallery view when he observed possible criminal violation outside scope of search authorization and did not renew search until he obtained new warrant).  Accordingly, counsel's alleged failure to explain or argue Carey or other relevant cases was not deficient or prejudicial.  The Court overrules defendant's third claim for relief.

## V.      Claim 4 - Advice To Plead Guilty

Defendant alleges that Morgan provided ineffective assistance because she advised defendant to plead guilty without investigating, explaining or asserting additional grounds to suppress evidence.  Motion For Leave To Expand The Record Of [Defendant's] 28 U.S.C. § 2255 [Motion] With New Evidence (Doc. #106) at 1; Defendant's Reply To Government Response To Defendant's Motion Pursuant To 28 U.S.C. § 2255 (Doc. #108) at 1.  In particular, defendant asserts that Morgan did not adequately investigate, advise or argue about potential meritorious arguments that (1) the warrant lacked probable cause because it was based on a single trash pull and (2) officers intentionally and knowingly misled the issuing judge by omitting facts about the reliability of marijuana field tests and their training with field tests and marijuana cultivation operations.

### A.      Merit Of Probable Cause Argument

Defendant argues that Morgan provided deficient performance because she failed to investigate, explain or argue that more than a single trash pull is required to establish probable cause for a search.  The number of trash pulls which result in incriminating information is a factor in determining probable cause, but it is not dispositive.  Instead, in determining probable cause, the issuing judge relies on "all the circumstances set forth in the affidavit" including the particular

information found in any trash pull.  Illinois v. Gates, 462 U.S. 213, 232 (1983).

Here, the Honorable Kevin Moriarty of the Johnson County, Kansas District Court issued the search warrant for defendant's apartment based on information that (1) approximately one month earlier, officers saw a white male driving defendant's car leaving The Green Circle after making a purchase, (2) officers knew that The Green Circle is a store which sells equipment that indoor growers use to grow marijuana, (3) on April 15, 2011, officers pulled trash from the dumpster behind defendant's apartment and found one trash bag with green leaves which field tested positive for the presence of THC, a piece of paper with "White Widow (H)" written on it, and printed email correspondence from defendant inquiring about the shipment of a $CO_2$ regulator valve, (4) officers learned that White Widow is a particular strain of marijuana, (5) officers knew that a $CO_2$ regulator valve is part of the equipment which individuals use to cultivate marijuana, (6) it takes 60 to 90 days for a marijuana plant to grow to maturity and harvest, (7) marijuana is often grown for sale and that some sales occur at the dealers' residences and (8) narcotics dealers commonly keep records of illegal activity in their residences.  Memorandum And Order (Doc. #33) at 4-5.  Based on the above information, the issuing judge could conclude that a person of reasonable caution could infer that contraband or evidence of a crime would be found at defendant's apartment.  See id.

Defendant argues that in similar marijuana cultivation cases, the state district attorney had asked officers to conduct multiple trash pulls before seeking a search warrant.  Motion For Leave To Expand The Record Of [Defendant's] 28 U.S.C. § 2255 [Motion] With New Evidence (Doc. #106) at 10-13.  The fact that a state district attorney may have asked officers to do multiple trash pulls before seeking a search warrant is not dispositive.  In defendant's particular case, the single trash pull, combined with other evidence presented to Judge Moriarty, was sufficient to establish probable cause.  Moreover, although Morgan did not argue that the number of trash pulls

was dispositive on the issue of probable cause, she highlighted the fact that the officers' suspicion was based on a "single trash pull."  Defendant's Motion To Suppress Evidence (Doc. #24) at 2. Defendant has not alleged sufficient facts to show that counsel's performance was deficient for failure to argue that multiple trash pulls are required to support a finding of probable cause.

>        B.        Merit Of Argument That Officers Omitted Information From Search Affidavit

Defendant argues that Morgan's performance was deficient because she failed to investigate, explain or argue that officers intentionally and knowingly omitted certain information from the search warrant affidavit: (1) that field tests for marijuana produce a 70 percent false positive when used with saturated samples and (2) that the officers did not have experience or training on marijuana cultivation operations, as claimed in the affidavit.

Defendant argues that he could have prevailed on his motion to suppress if counsel had asked for a hearing under Franks v. Delaware, 438 U.S. 154 (1978).  The Fourth Amendment prohibits an affiant in an application for a search warrant from knowingly and intentionally, or with reckless disregard for the truth, making a false statement.  United States v. Basham, 268 F.3d 1199, 1204 (10th Cir. 2001).  Where an affiant makes a false statement, the warrant must be voided if the affidavit's remaining content is insufficient to establish probable cause.  See id.  The Tenth Circuit has applied this rule "to intentional or reckless omissions of material facts, which, if included, would vitiate probable cause."  Id. (citing Stewart v. Donges, 915 F.2d 572, 581-83 (10th Cir. 1990)). Recklessness can be inferred where the omitted facts were "clearly critical" to a finding of probable cause.  DeLoach v. Bevers, 922 F.2d 618, 622 (10th Cir. 1990).  In a case where defendant alleges that information was intentionally omitted from an affidavit, the existence of probable cause is determined by examining the affidavit as if the omitted information had been included and determining whether the affidavit would still give rise to probable cause.  Basham, 268 F.3d at 1204.

To warrant a hearing, defendant must make a substantial showing that officers knowingly and intentionally included a material false statement or omission in the warrant affidavit.  See Franks, 438 U.S. at 155-56.

Defendant first claims that Mark Burns, a Deputy Sheriff with the Johnson County Sheriff's Department, intentionally and knowingly omitted from the search warrant affidavit the fact that field tests for marijuana produce a 70 percent false positive when used with saturated samples.  Defendant argues that in a civil rights case – Harte v. Board of Commissioners of Johnson County, Kansas, No. 13-2586-JWL, 2014 WL 5089410, 2014 U.S. Dist. LEXIS 143772 (D. Kan. Oct. 9, 2014) – Morgan successfully argued this same point to show that Deputy Burns and others prepared a warrant which included materially false or misleading statements.  Motion For Leave To Expand The Record Of [Defendant's] 28 U.S.C. § 2255 [Motion] With New Evidence (Doc. #106) at 2-6, 16-23; Defendant's Reply To Government Response To Defendant's Motion Pursuant To 28 U.S.C. § 2255 (Doc. #108) at 2, 12-15.

As defendant notes, the searches in his case and Harte arose out of the same investigation of indoor marijuana grow operations in the Spring of 2012.  The investigation culminated in numerous searches on April 20, 2012 – a date known as an unofficial "holiday" among marijuana users.  Harte, 2014 WL 5089410, at *2.  In both Harte and defendant's case, Missouri State Highway Patrol Sergeant Jim Wingo observed individuals enter The Green Circle hydroponics store and later provided this information to Sergeant Thomas Reddin in the Johnson County, Kansas Sheriff's Office.  Id. at *1-2.  Sergeant Reddin then ordered trash pulls associated with the individuals who left the hydroponics store.  Based on the information from trash pulls, Deputy Burns prepared the search warrant affidavit in both cases.  Officers from the Johnson County Police Department conducted the searches in both cases on April 20, 2012.  In Harte, officers discovered only a

hydroponic garden and no evidence of criminal activity.  Id. at *2.  In Harte, the property owners filed a civil rights complaint against Sergeant Reddin, Sergeant Wingo, Officer Mark Burns and others asserting various constitutional claims based on theory that the search was unlawful.  Harte v. Bd. of Commr's of Johnson Cty., Kan., 151 F. Supp.3d 1168, 1176 (D. Kan. 2015).

In Harte, Sergeant Wingo filed a motion to dismiss plaintiffs' civil rights complaint for failure to state a claim against him.  2014 WL 5089410, at *1-2.  The Honorable John W. Lungstrum overruled Sergeant Wingo's motion because plaintiffs had alleged sufficient facts to show that Sergeant Wingo caused the alleged constitutional violations related to the search.  Id. at *3-4. Defendant repeatedly cites this ruling as evidence that Morgan could have made the same successful challenge as part of the defense in his criminal case.  Motion For Leave To Expand The Record Of [Defendant's] 28 U.S.C. § 2255 [Motion] With New Evidence (Doc. #106) at 2, 4, 18-20; Defendant's Reply To Government Response To Defendant's Motion Pursuant To 28 U.S.C. § 2255 (Doc. #108) at 1, 4, 13.  Defendant fails to note that in Harte, Judge Lungstrum's initial ruling was limited to the sufficiency of the civil rights complaint against Sergeant Wingo.  Harte, 2014 WL 5089410, at *3-4.  Judge Lungstrum later granted summary judgment for defendants finding that the property owners had not presented sufficient evidence of a constitutional violation related to the search of their residence.  Judge Lungstrum addressed the search affidavit and the alleged omission of information involving the reliability of field tests, as follows:

> While the court does not doubt that a judge would have wanted to know that the field test kits that Deputy Burns and Deputy Blake were using tended to yield false positive results "at a high rate," there is simply no evidence that Deputy Burns or Deputy Blake had any knowledge of that information.  In fact, as plaintiffs point out in their submissions, Deputy Burns testified that, at the time he tested the plant material he discovered in plaintiffs' trash, he had no knowledge that anything other than marijuana could test positive on a marijuana field test kit and that he was "not aware" of the possible occurrence of false positive test results.  Deputy Blake's testimony on those issues is substantially the same.  Moreover, Sheriff Denning

testified that, since he came to the Johnson County Sheriff's Office in 1978, the Office has conducted "thousands" of field tests and the only false positive results of which he is aware are the results at issue in this case. There is no basis to conclude, then, that Deputy Burns or Deputy Blake should have known that the field test kits they were using tended to yield false positive results. And even assuming that Deputy Burns or Deputy Blake should have known, as plaintiffs suggest, that a false positive is at least a theoretical possibility, plaintiffs have not shown that Deputy Burns recklessly omitted that information from the affidavit, where he clearly stated on two occasions that the rest result was "presumptive" but "not conclusive" for the presence of marijuana and neither Deputy Burns nor Deputy Blake had any particularized knowledge concerning the likelihood of obtaining a false positive under the circumstances presented. See Molina ex rel. Molina, 325 F.3d at 971 (rejecting argument that officer should have discussed in the search warrant affidavit the fact that field tests were unreliable; plaintiffs presented no evidence that officer had reason to know that field tests were unreliable when he applied for the warrant). For all of these reasons, then, plaintiffs cannot establish that Deputy Burns recklessly failed to disclose that the field test kit utilized by Deputy Burns and Deputy Blake tended to yield false positive results at a high rate. See United States v. Comer, 565 Fed. Appx. 729, 731-32 (10th Cir. 2014) (record did not support finding that investigator recklessly omitted informant's criminal history from warrant affidavit where there was no evidence that investigator had knowledge of informant's criminal history).

Based on the totality of the circumstances, plaintiffs have not shown that the warrant lacked probable cause and, thus, defendants' search of plaintiffs' residence was lawful and no constitutional violation occurred.

Harte, 151 F. Supp.3d at 1185-86 (footnotes omitted).

Defendant repeatedly points out similarities between Harte and his case. He has presented no facts, however, which suggest that had counsel raised the argument that Deputy Burns intentionally omitted information about the accuracy of field test results, this Court would have reached a different result than in Harte. Indeed, because the search in Harte and in this case occurred on the same day and Deputy Burns prepared the affidavits in both cases, this Court likely would have reached a similar conclusion as in Harte, i.e. that Deputy Burns did not recklessly fail to disclose information about the accuracy of field test results. In fact, the evidence supporting a finding of probable cause in this case was stronger than in Harte. Here, Sergeant Wingo saw an

individual associated with defendant's car at The Green Circle only one month before officers applied for the warrant. In Harte, Sergeant Wingo saw the individual at The Green Circle some seven months earlier. In addition, in Harte, the material was "wet, saturated plant material," 151 F. Supp.3d at 1173, which could potentially lead to a higher chance of a false positive. Finally, unlike Harte, officers found additional items in defendant's trash which suggested marijuana cultivation.[6]

Defendant next claims that contrary to claims in the affidavit, Deputy Burns and Sergeant Reddin did not have experience or training with field tests and marijuana cultivation operations, and Deputy Burns intentionally and knowingly omitted this fact from the affidavit. In Harte, Judge Lungstrum rejected a similar argument as follows:

> [P]laintiffs contend that Deputy Burns recklessly omitted from the affidavit that he lacked formal training in using the Lynn Peavey KN reagent field test that he used in April 2012 and that those particular field test kits are "known to yield false positives" at a very high rate in connection with common kitchen herbs, spices and caffeine. Plaintiffs have failed to come forward with facts suggesting that Deputy Burns' failure to disclose his lack of "formal" training on the field test kit that he used was reckless. The affidavit states that Deputy Burns had been employed as a deputy sheriff for 15 years at the time of the affidavit with more than 8 years of experience participating in narcotics investigations. The affidavit reveals that Deputy Burns had extensive on-the-job experience as well as additional training in drug law enforcement and investigations. Against this backdrop, there is nothing in the record to suggest that a judge would have wanted to know that Deputy Burns lacked "formal" training on the specific field test he used in April 2012.

Harte, 151 F. Supp.3d at 1185. For substantially the reasons which Judge Lungstrum stated, defendant has not shown that Deputy Burns recklessly omitted information about officer training or that such information likely would have had any impact on Judge Moriarty's probable cause

---

[6]     One fact in Harte that was a stronger indicator of probable cause was that officers conducted three trash pulls and two of those trash pulls resulted in positive field tests for marijuana. As indicated above, however, the material in Harte was saturated plant material.

conclusion.[7]

For these reasons, defendant has not shown that Morgan provided deficient performance because she failed to investigate, explain or argue that officers intentionally and knowingly omitted from the search warrant affidavit information that (1) field tests for marijuana produce a 70 percent false positive when used with saturated samples and (2) they did not have the experience or training on marijuana cultivation operations which the affidavit claimed.

C.    Prejudice From Counsel's Failure To Explain Or Argue Additional Defenses

Even if the Court assumes that counsel's performance was somehow deficient in failing to investigate, advise or assert these additional defenses, he has not shown prejudice.  In particular, defendant has not shown a reasonable probability that if Morgan had raised the issues,  he would have prevailed on his motion to suppress.  As noted above, defendant has not shown that the number of trash pulls is dispositive or that the officers here intentionally omitted material information from the search warrant affidavit.

Likewise, defendant has not shown a reasonable probability that if Morgan had informed him of the issues above, asserted them and lost at a suppression hearing, he would not have pled guilty

---

[7]    Defendant argues that in discovery in Harte, Sergeant Reddin essentially admitted that he did not have the "training and experience needed to properly identify marijuana and marijuana materials to perform a satisfactory field test."  Defendant's Reply To Government Response To Defendant's Motion Pursuant To 28 U.S.C. § 2255 (Doc. #108) at 13. Defendant cites emails dated January 12 and May 12, 2011 in which Sergeant Reddin noted that he and others were pretty new to "indoor marijuana grows" and asked Sergeant Wingo for training on "indoor grow operations" for "court credibility" purposes.  Id. at 9-11, 13.  Sergeant Reddin's request for additional training on indoor grow operations does not diminish his credibility that he could identify marijuana leaves in defendant's trash based on his experience.  In any event, Sergeant Reddin's initial identification of the leaves as marijuana was immaterial because the field test confirmed his identification.  Accordingly, Sergeant Reddin's ability to identify marijuana would not make a difference to the issuing judge.  See Harte, 151 F. Supp.3d at 1183-84 (because any uncertainty about identification of leaf dissipated when it field tested positive for marijuana, no reasonable officer would have included details about initial uncertainties in warrant application).

and would have insisted on going to trial so that he could appeal.  See Hill v. Lockhart, 474 U.S. 52,

59 (1985); United States v. Clingman, 288 F.3d 1183, 1186 (10th Cir. 2002); Miller v. Champion,

262 F.3d 1066, 1068-69 (10th Cir. 2001).  As noted above, under the facts of his case, the relevant

case law does not compel suppression of child pornography found on defendant's computer and

defendant has not shown that officers intentionally omitted material information from the search

warrant affidavit.  In addition, under the plea agreement, the government agreed (1) to dismiss two

counts which charged receipt of child pornography and carried a statutory maximum of 20 years in

prison and (2) to a binding sentence of 72 months in prison, which was 15 months less than the

minimum of the applicable range under the Sentencing Guidelines.  Plea Agreement Pursuant To

Fed. R. Crim. P. 11(c)(1)(C) (Doc. #63) ¶¶ 3, 5; see Indictment (Doc. #1).  In light of the evidence

and the significant benefits which defendant received under the plea agreement, defendant has not

shown how a decision to reject the plea bargain would have been rational under the circumstances.

Padilla, 559 U.S. at 372.  The Court overrules defendant's fourth claim for relief.

### Conclusion

The files and records in this case conclusively show that defendant is not entitled to relief.

Moreover, defendant does not allege specific and particularized facts which, if true, would entitle

him to relief.  Accordingly, no evidentiary hearing is required.  See 28 U.S.C. § 2255; United States

v. Cervini, 379 F.3d 987, 994 (10th Cir. 2004) (standard for evidentiary hearing higher than notice

pleading); United States v. Kilpatrick, 124 F.3d 218 (Table), 1997 WL 537866, at *3 (10th Cir.

1997) (conclusory allegations do not warrant hearing); United States v. Marr, 856 F.2d 1471, 1472

(10th Cir. 1988) (no hearing required where court may resolve factual matters raised by

Section 2255 petition on record); United States v. Barboa, 777 F.2d 1420, 1422-23 (10th Cir. 1985)

(hearing not required unless "petitioner's allegations, if proved, would entitle him to relief" and

allegations are not contravened by record).

### **Certificate Of Appealability**

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).[8]  To satisfy this standard, the movant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Saiz v. Ortiz, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting Tennard v. Dretke, 542 U.S. 274, 282 (2004)).  For reasons stated above, the Court finds that defendant has not satisfied this standard.  The Court therefore denies a certificate of appealability as to its ruling on defendant's Section 2255 motion.

**IT IS THEREFORE ORDERED** that defendant's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Doc. #76) filed November 10, 2014 is **OVERRULED**.

**IT IS FURTHER ORDERED** that a certificate of appealability as to the ruling on defendant's Section 2255 motion is **DENIED**.

**IT IS FURTHER ORDERED** that defendant's Motion For Leave To Expand The Record Of [Defendant's] 28 U.S.C. § 2255 [Motion] With New Evidence (Doc. #106) filed October 7, 2016. is **SUSTAINED**.

**IT IS FURTHER ORDERED** that defendant's Motion To Recuse Attorney Of Record (Doc. #107) filed October 7, 2016 is **OVERRULED as moot**.

---

[8]     The denial of a Section 2255 motion is not appealable unless a circuit justice or a circuit or district judge issues a certificate of appealability.  See Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(1).

**IT IS FURTHER ORDERED** that the Assistant United States Attorney assigned to this case shall distribute this order to each Assistant United States Attorney in the District of Kansas.  On or before February 7, 2017, government counsel shall file a notice that she has complied with this order.

Dated this 18th day of January, 2017 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge